UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **CHARLES CRIM,**<br><br>       **Plaintiff,**<br><br>  v.<br><br>**PHILLIPS & COHEN ASSOCIATES LTD.**<br>**PCA ACQUISITIONS V, LLC, AND**<br>**SYNCHRONY BANK**<br><br>       **Defendants.** | C.A. No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Charles Crim, by and through the undersigned counsel, complains, states, asserts, and alleges against defendants Phillips & Cohen Associates Ltd., PCA Acquisitions V, LLC, and Synchrony Bank, as follows:

**INTRODUCTION**

1. This is an action to recover damages for negligence and substantially assisting in violations of the law, and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

2. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive

1

debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*., § 1692(e). After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id*., § 1692k.

4. In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5. The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

## JURISDICTION AND VENUE

6. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7. This court has jurisdiction over defendants Phillips & Cohen Associates Ltd., PCA Acquisitions V, LLC, and Synchrony Bank because they regularly conduct and transact business in this state, and are located in this District or have sufficient minimum contacts in this District.

8. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because defendants are located in this District and a substantial part of the conduct complained of herein occurred in this Judicial District.

## PARTIES

9. Plaintiff Charles Crim ("Plaintiff") is a natural person who is a citizen of the State of Missouri residing in Springfield, Greene County, Missouri.

10. Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

11. Defendant Phillips & Cohen Associates Ltd. ("Phillips") is a company existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

12. Phillips has transacted business within this state as is more fully set forth hereinafter in this Complaint.

13. Phillips regularly collects or attempts to collect debts asserted to be owed to others.

14. Phillips is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

15. The principal purpose of Phillips's business is the collection of such debts.

16. Phillips uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

17. Phillips is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. Defendant PCA Acquisitions V, LLC ("PCA") is a company existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

19. PCA has transacted business within this state as is more fully set forth hereinafter in this Complaint.

20. PCA regularly collects or attempts to collect debts asserted to be owed to others.

21. PCA is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

22. The principal purpose of PCA's business is the collection of such debts.

23. PCA uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

24. PCA is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

25. Defendant Synchrony Bank ("Synchrony") is a wholly owned subsidiary of Synchrony Financial, a consumer financial services company headquartered in Stanford, Connecticut, doing business in the State of Delaware.

26. Phillips, PCA, and Synchrony are hereinafter collectively referred to as the "Defendants."

## FACTUAL ALLEGATIONS

27. Phillips and PCA allege Plaintiff owes a debt to PCA Acquisitions V, LLC for a personal Verizon credit account previously owed to Synchrony.

28. Plaintiff retained attorneys to represent him with respect to the alleged debt.

29. On January 2, 2024, February 5, 2024, and then on May 10, 2024, Plaintiff's attorneys notified Synchrony Bank of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Letters of Representation").

30. The Letters of Representation set forth Plaintiff's attorneys' name and address.

31. In fact, Synchrony acknowledged the Letters of Representation and began communicating directly with Plaintiff's attorneys.

32. Creditors, like Synchrony, have a pattern and practice of transferring or assigning debts after receipt of Letters of Representation because Synchrony renders the account uncollectible once a consumer retains an attorney or provides a cease and desist.

33. Thereafter, on an exact date known only to Defendants, the alleged debt was purportedly transferred and/or assigned to PCA for the purposes of collection.

34. It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

35. It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters, such as "Cease and Desist Bulk," "C&D-POA," "CD-POA," or "CAD.".

36. Further, it is in the interest of public policy when debts are transferred and/or assigned to downstream entities, including debt collectors, for all information to be transferred, including Letters of Representation.

37. PCA was notified by Synchrony of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name included a notation which informed PCA that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

38. PCA was notified by Synchrony of the Letters of Representation in the account level documentation.

39. PCA was notified by Synchrony of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed PCA that the portfolio was a portfolio of

5

accounts that previously provided a cease and desist from further direct communication with the consumer.

40. When a consumer's account is sold in a true sale the purchaser would receive the entire file and account history from the seller for the account.

41. The legal standard for a **true sale** is governed by both federal and state law.

42. Additionally, the criteria for a true sale under U.S. GAAP would include: i) legal isolation of the transferred assets, which places the assets beyond the reach of the transferor's creditors or a bankruptcy trustee for the transferor, ii) the transferee's right to freely pledge or exchange the transferred assets, and iii) the transferor's relinquishment of effective control of the transferred assets.

43. Conversely, the transaction would likely not be a true sale if it includes certain indicia of retained ownership, such as: i) the receipt by the seller of certain servicing fees in connection with the disposed assets, ii) the right of the seller to repurchase the disposed assets, iii) the right of the seller to share in the profits or revenue generated by the disposed assets, or iv) the right of the seller to terminate the sale transaction.

44. PCA asserts it is the current creditor of the alleged debt, therefore, PCA would have received all material information and documentation regarding the account, including the Letters of Representation.

45. Thereafter, on an exact date known only to PCA and Phillips, the alleged debt was transferred, assigned, or otherwise placed with Phillips for the purposes of collection.

46. As part of its utilization of Phillips, PCA conveyed information concerning Plaintiff and the alleged debt to Phillips by electronic means.

47. The information conveyed by PCA to Phillips, which, upon information and belief,

was viewed by employees of Phillips, contained Plaintiff's personal and private information including personal identifying data, among other things.

48. Despite the Letters of Representation, in an effort to collect the alleged debt, Phillips caused a letter, dated May 1, 2025 (the "May Letter"), and June 4, 2025 (the "June Letter"), to be sent to Plaintiff directly.

49. Plaintiff received and read the May Letter and June Letter.

50. Plaintiff's attorneys did not consent to Defendants' direct communication with Plaintiff.

51. Phillips did not send the May Letter or June Letter to Plaintiff's attorneys.

52. Phillips did not send any letters concerning the alleged debt to Plaintiff's attorneys.

53. Phillips did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt.

54. In fact, Defendants have a pattern and practice of communicating with consumers after receiving attorney representation letters and/or cease and desist letters.

55. In fact, Defendants have a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' representation.

56. In fact, Defendants have a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' information.

57. It is standard practice in the accounts receivable management industry for creditors and debt collectors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

58. It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are

identified as subject to attorney representation letters and/or cease and desist letters.

59. It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

60. Defendants had actual notice of the Letters of Representation.

61. Phillips had actual notice of the Letters of Representation either from the placement file(s) or through a client portal or intranet provided to Phillips, which contains account level documentation such as the Synchrony Bank account documentation for Plaintiff that included Plaintiff's attorneys' name and address.

62. Phillips had actual notice of the Letters of Representation as an affiliated entity with PCA and its agent.

63. Defendants have a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite having actual notice of attorney representation letters and/or cease and desist letters related to the alleged debt.

64. Defendants have a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite there being attorney representation letters and/or cease and desist letters from consumers' attorneys related to the alleged debt.

65. The May Letter alleged that Plaintiff no longer owed money to Synchrony Bank, but now owed $2,671.74 to PCA.

66. However, Plaintiff was never indebted to PCA, and was never indebted to PCA for $2,671.74.

67. Debt scavengers purchase large CSV files or Excel spreadsheets of purported "accounts" from credit card companies or other debt scavengers for pennies on the dollar. These files are usually without account-level documentation establishing that the amount sought is correct, and without sufficient proof of the debt scavenger's legal right, title and/or interest in the money sought. By paying so little for the debt, debt scavengers stand to make tremendous amounts of money when unsuspecting or easily confused consumers pay even a small portion of the money sought.

68. According to data provided by the Consumer Financial Protection Bureau (the "CFPB"), consumer complaints about debt scavenger and collectors attempting to collect money not actually owed by the consumer are by far the most common of all complaints received by the Bureau every year.

69. Upon information and belief, PCA is a debt scavenger.

70. Upon information and belief, PCA purchases large CSV files or Excel spreadsheets of purported "accounts" and merely uploads said data into its account management system without reviewing any of the information regarding any individual account or balance allegedly owed.

71. Upon information and belief, after uploading these data, PCA begins to attempt to collect the accounts without performing any inquiry into the account or balance allegedly owed.

72. Upon information and belief, PCA purchased a CSV file or Excel spreadsheet that included Plaintiff's name, but failed to include account-level documentation, such as a credit agreement signed by Plaintiff or any other competent proof that Plaintiff owed the amount sought to establish PCA's legal right, title and/or interest in $2,671.74 allegedly owed by Plaintiff.

73. Indeed, Plaintiff was never indebted to PCA for $2,671.74 and PCA never extended credit to Plaintiff for $2,671.74.

74. Plaintiff was never involved in any transaction with PCA for $2,671.74 and never entered into any contract with PCA for the payment of $2,671.74.

75. Upon information and belief, Defendants do not possess competent proof that Plaintiff owes $2,671.74 to PCA.

76. Upon information and belief, Defendants do not possess any credit agreement between Plaintiff and PCA for $2,671.74.

77. Upon information and belief, Defendants do not possess competent proof that Plaintiff agreed to pay $2,671.74 to PCA.

78. Upon information and belief, Defendants do not possess any competent proof that Plaintiff is obligated to pay $2,671.74 to PCA.

79. Upon information and belief, Defendants do not possess any competent proof that $2,671.74 was ever owed by Plaintiff to PCA.

80. Upon information and belief, Defendants do not possess any competent proof that Plaintiff owed $2,671.74 at the time PCA purchased the portfolio of debt.

81. Defendants hold no legal right, title or interest in $2,671.74 owed by Plaintiff.

82. Thereafter, Plaintiff spent time and money sending the May Letter and June Letter to his attorneys.

83. On June 11, 2025, Plaintiff's attorneys notified Defendants again of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Additional Letter of Representation").

84. Synchrony and PCA are liable for the debt collectors they retain.

85. The acts of Defendants as described in this Complaint were performed by

Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to Defendants in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

86. Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

87. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

88. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted economic harm.

89. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

90. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued.

91. A favorable decision herein would serve to deter Defendants from further similar conduct.

## FIRST COUNT
## Violation of 15 U.S.C. §§ 1692c(b) and 1692f

92. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

93. The Plaintiff is a "consumer" as that term defined by the FDCPA.

94. Phillips is a "debt collector" as that term is defined by the FDCPA.

95. PCA is a "debt collector" as that term is defined by the FDCPA.

96. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

97. The May Letter is a "communication" as that term is defined by the FDCPA.

98. The June Letter is a "communication" as that term is defined by the FDCPA.

99. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

100. 15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

101. The third-party debt collector does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

102. PCA's conveyance of Plaintiff's personal and private information to Phillips is a "communication" as that term is defined by the FDCPA.

103. Plaintiff never consented to PCA's communication with the third-party debt collector concerning the alleged Debt.

104. Plaintiff never consented to PCA's communication with the third-party debt collector concerning Plaintiff's personal and/or confidential information.

105. Plaintiff never consented to PCA's communication with Phillips concerning Plaintiff's personal and/or confidential information.

106. Plaintiff never consented to PCA's communication with anyone concerning the alleged Debt or concerning Plaintiff's personal and/or confidential information.

107. Upon information and belief, PCA has utilized a third-party debt collector for these purposes thousands of times.

108. PCA utilizes a third-party debt collector in this regard for the sole purpose of

maximizing its profits.

109. PCA utilizes a third-party debt collector without regard to the propriety and privacy of the information which it discloses to such third-party.

110. PCA utilizes a third-party debt collector with reckless disregard for the harm to Plaintiff and other consumers that could result from PCA's unauthorized disclosure of such private and sensitive information.

111. PCA utilizes a third-party debt collector with reckless disregard for Plaintiff's right to privacy.

112. PCA utilizes a third-party debt collector with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

113. PCA violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debts to the third-party debt collector.

114. 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

115. The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

116. PCA disclosed Plaintiff's private and sensitive information to the third-party debt collector.

117. PCA violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party debt collector.

118. As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers. 15 U.S.C. § 1692(a)-(b).

119. Specifically, Congress sought to protect consumers from communications by debt collectors to third parties. See S. Rep. No. 95-382, at 4 (1977) reprinted in U.S.C.C.A.N. 1695, 1698.

120. As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

121. A violation of Section 1692c(b) is an invasion of privacy.

122. As described herein, PCA violated Section 1692c(b).

123. As described herein, PCA invaded Plaintiff's privacy.

124. A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

125. A violation of Section 1692c(b) is a public disclosure of private facts.

126. As described herein, PCA violated Section 1692c(b).

127. As described herein, PCA publicly disclosed Plaintiff's private facts.

128. For the foregoing reasons, PCA violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

## SECOND COUNT
### Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)

129. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

130. The Plaintiff is a "consumer" as that term defined by the FDCPA.

131. Phillips is a "debt collector" as that term is defined by the FDCPA.

132. PCA is a "debt collector" as that term is defined by the FDCPA.

133. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

134. The May Letter is a "communication" as that term is defined by the FDCPA.

135. The June Letter is a "communication" as that term is defined by the FDCPA.

136. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

137. 15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

138. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

139. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

140. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

141. An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

142. An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

143. As previously stated in this Complaint, Plaintiff did not owe the amount Phillips alleged is owed to PCA by Plaintiff.

144. PCA and Phillips' contention that Plaintiff owed the alleged debt to PCA, when Plaintiff did not owe the alleged debt to PCA, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

145. PCA and Phillips' contention that Plaintiff owed the alleged debt to PCA, when

Plaintiff did not owe the alleged debt to PCA, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

146. PCA and Phillips' contention that Plaintiff owed the alleged debt to PCA, when Plaintiff did not owe the alleged debt to PCA, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

147. PCA and Phillips' contention that Plaintiff owed the alleged debt to PCA, when Plaintiff did not owe the alleged debt to PCA, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10)

148. For the foregoing reasons, PCA and Phillips violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10) and are liable to Plaintiff therefor.

## THIRD COUNT
### Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

149. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

150. The Plaintiff is a "consumer" as that term defined by the FDCPA.

151. Phillips is a "debt collector" as that term is defined by the FDCPA.

152. PCA is a "debt collector" as that term is defined by the FDCPA.

153. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

154. The May Letter is a "communication" as that term is defined by the FDCPA.

155. The June Letter is a "communication" as that term is defined by the FDCPA.

156. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

157. 15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to

such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

158. As described herein, PCA and Phillips violated 15 U.S.C. § 1692c(a)(2).

159. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

160. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

161. PCA and Phillips invaded Plaintiff's privacy.

162. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

163. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

164. As described herein, PCA and Phillips violated 15 U.S.C. § 1692c(c).

165. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

166. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

167. PCA and Phillips intruded upon Plaintiff's rights to solitude and seclusion.

168. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

169. A violation of Section 1692c(c) is an interference with the attorney-client

relationship.

170. PCA and Phillips interfered with Plaintiff's and his attorney's attorney-client relationship.

171. For the foregoing reasons, PCA and Phillips violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are liable to Plaintiff therefor.

## FOURTH COUNT
## NEGLIGENCE

172. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

173. Creditors owe consumers a duty of reasonable care in the collection of debts.

174. Synchrony owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

175. Synchrony owed a duty to Plaintiff to exercise reasonable care in the transfer of Plaintiff's account to PCA.

176. Synchrony owed a duty to Plaintiff not to transfer Plaintiff's account to a debt collector that engages in deceptive acts and practices when attempting to collect debts.

177. Synchrony breached these duties by transferring Plaintiff's account to PCA without any regard for the deceptive acts and practices that PCA engages in.

178. As a direct and proximate result of Synchrony's negligence, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## FIFTH COUNT
## Substantially Assisting Violations of the FDCPA: Transfer of a Debt to a Debt Collector That Engages in False, Misleading, Deceptive, Unfair, Unconscionable, Harassing, Abusive, Oppressive, and/or Other Unlawful Conduct

179. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

180. Synchrony transfers pools of consumer debts to PCA for purposes of collection.

181. Synchrony participates in the placing and transfer of consumer debt portfolios and has the authority to control the transfers.

182. Synchrony exercises control over PCA regarding the accounts Synchrony transfers to PCA by requiring reporting to Synchrony, auditing PCA, setting policies and procedures, and having the ability to recall accounts.

183. Synchrony knows or should know that PCA engages in deceptive acts and practices.

184. Synchrony through its actions either assists PCA in violations of the FDCPA or by its inactions assists PCA in violations of the FDCPA.

185. Synchrony knowingly or recklessly assisted PCA in PCA's deceptive acts and practices, and violations of the law.

186. As a direct and proximate result of Synchrony's conduct, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## JURY DEMAND

187. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment be entered as follows:

a. Finding PCA and Phillips' actions violate the FDCPA; and

b. Awarding separate damages to Plaintiff pursuant to 15 U.S.C. § 1692k for violations of the FDCPA related to each account identified herein; and

c. Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

d. Awarding the costs of this action to Plaintiff pursuant to the FDCPA; and

e. Actual, treble, exemplary, and punitive damages on Plaintiff's negligence causes of action against Synchrony; and

    f.  Actual, treble, exemplary, and punitive damages on Plaintiff's Substantially Assisting Violations of the FDCPA causes of action against Synchrony; and

    g.  Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

    h.  Such other and further relief that the Court determines is just and proper.

Dated: January 20, 2026

<u>By: s/ Antranig Garibian</u>
Antranig Garibian, Esq. (DE Bar 4962)
Garibian Law Offices, P.C.
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE 19803
Tel: (302) 722-6885
*Attorneys for Plaintiff*
